**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

ROBERT CAMPBELL, individually and on )
behalf of all others similarly situated, )
                                         )
            Plaintiff,                   )
                                         )
    v.                                   )        Case No.:
                                         )
VALVOLINE INC., a Kentucky corporation,) JURY TRIAL DEMANDED
                                         )
            Defendant.                   )

## CLASS ACTION COMPLAINT

Plaintiff, Robert Campbell, individually and on behalf of all others similarly situated, through his undersigned counsel, alleges the following against Defendant, Valvoline Inc., based upon personal knowledge as to himself and information and belief as to all other matters.

## INTRODUCTION

1.      This action is brought by Plaintiff individually and on behalf of the class of vehicle owners defined herein who went to Valvoline to have their engine oil changed and were given oil that did not meet the vehicle manufacturer's specifications.

2.      Unbeknownst to Plaintiff and countless others like him whose vehicles have the same or similar oil specifications, Valvoline used oil of a different viscosity thereby causing them out of pocket loss for the amounts they paid for the service in addition to decreased performance, engine damage and loss of warranty coverage.

3.      Based on the foregoing, Plaintiff seeks classwide relief for breach of contract, breach of the implied warranty of fitness for a particular purpose, violation of the Indiana Deceptive Consumer Sales Act and unjust enrichment.

## PARTIES

4.     Plaintiff, Robert Campbell, is a natural person residing in and a citizen of Westfield, Indiana. Plaintiff is a member of the class of persons defined herein.

5.      Defendant, Valvoline Inc. ("Valvoline"), is a corporation organized under the laws of the State of Kentucky with its principal place of business in Lexington, Kentucky. At all times relevant hereto, Valvoline operates and franchises service center locations through its Valvoline Instant Oil Change ("VIOC") retail locations throughout the State of Indiana, including the VIOC located in Westfield, Indiana.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(d)(2) because (a) there are 100 or more class members, (b) at least one class member is a citizen of a state that is diverse from Defendant's citizenship, and (c) the aggregate matter in controversy exceeds $5,000,000, exclusive of interest and costs.

7.     This Court has personal jurisdiction over Valvoline because this suit arises out of or relates to Defendant's contacts with the State of Indiana, including its operation or franchising of VIOC locations throughout this State. As alleged further herein, Plaintiff and other members of the class also suffered injury in Indiana because Valvoline's replaced the oil in Plaintiff's and other vehicles it serviced at VIOC locations in Indiana that did not meet the vehicle manufacturer's specifications.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. Specifically, the servicing of Plaintiff's and other class members' vehicles occurred at the VIOC location within this District in Westfield, Indiana.

**FACTUAL ALLEGATIONS**

9.     SAE (Society of Automotive Engineers) viscosity numbers describe how motor oil flows at hot and cold temperatures. Most modern oils are multigrade, indicated by a "W" and two numbers (e.g., 5W-30).

10.     The first number of a multigrade oil represents how the oil flows when the engine is cold, such as during startup, with the "W" standing for Winter. Lower first numbers mean better flow in cold weather. For example, 0W oil flows more easily at sub-zero temperatures than 5W oil, reducing engine wear during the critical seconds of a cold start.

11.     The second number (after the dash) of a multigrade oil represents the oil's viscosity at normal engine operating temperature. A higher second number means thicker oil at high temperatures. For example, a 5W-40 oil will remain thicker and provide a more robust protective film when hot than a 5W-30 oil. At high temperatures, thicker oil (higher number) generally offers better protection for heavy loads or high-heat environments, while thinner oil (lower number) can improve fuel economy by reducing internal friction.

12.     Vehicle manufacturers specify which oil to use through formal technical documentation and labeling that is legally and engineering-significant, not just advisory. This communication is critical because engine oil is treated as a design-dependent consumable, not a generic fluid.

13.     Engine oil viscosity — the resistance of the oil to flow — is not arbitrary: it is defined by the SAE J300 standard, which sets cold and high-temperature viscosity requirements for multigrade oils. These requirements ensure the oil will form a protective hydrodynamic film between moving parts across real operating temperatures and loads. Using a grade outside that

range alters film thickness at critical points in the engine, risking metal-to-metal contact under load.

14.    At cold start, oil must flow quickly so that pumps, bearings and other internally lubricated parts receive lubrication immediately.

15.    At normal operating temperature, oil must maintain enough thickness to sustain a fluid film under high shear. If viscosity is too low at high temperature, the film is too thin — increasing wear; too high, and it drags the engine, wasting energy and reducing efficiency.

16.    Manufacturers specify a particular SAE viscosity (e.g., SAE 0W-20, 5W-30) because they have designed bearing clearances, pump calibration, and temperature profiles to match that grade.

17.    Failure to use the viscosity oil specified by the vehicle manufacturer can not only decrease performance and fuel economy but can also damage the engine and void the warranty.

18.    Notwithstanding the importance of using the correct engine oil, upon information and belief, VIOC locations in the United States regularly replace engine oil in customer's vehicles with oil that does not meet the vehicle manufacturer's specifications.

### *Plaintiff's Experience*

19.    For example, when Plaintiff had his 2025 Kia Sorento serviced at the VIOC location in Westfield, Indiana, on or about October 8, 2025, VIOC replaced the engine oil with Valvoline's own 5W-30 oil despite the vehicle manufacturer's specification that only 0W-30 oil be used.

20.    Plaintiff paid Valvoline $102.99 for the oil change before discounts, taxes and a charge for extra oil. Several days later, Plaintiff discovered that Valvoline did not use the oil specified by Kia. Plaintiff then requested a refund but instead was provided with a different oil that

- 4 -

also did not meet the vehicle manufacturer's specifications, requiring him to have the oil replaced a third time by a different servicer with the correct oil at his expense.

21.     When Plaintiff complained to Valvoline's national customer service center, he was informed that Valvoline service centers do not carry the oil with the same specifications required by Kia as no such oil is manufactured by Valvoline.

22.     Upon information and belief, Valvoline's substitution of 5W-30 oil for 0W-30 was not an isolated incident because, *inter alia*, as it does not manufacture a 0W-30 oil suitable for Plaintiff's vehicle and its website incorrectly states that 5W-30 oil is the proper oil for all 2025 Kia Sorento 2.5-liter turbo engines, contrary to the manufacturer's specifications.

## CLASS ACTION ALLEGATIONS

23.     This action is brought and may be properly maintained as a class action pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure.

24.     Plaintiff brings this action individually and on behalf of the following class, including an Indiana Subclass defined as follows (the "Class"):

> All individual owners of vehicles serviced at a Valvoline Instant Oil Change location operated by Valvoline Inc. and whose vehicle engine oil was replaced with oil that did not conform to the vehicle manufacturer's specifications.

### Indiana Subclass

> All Indiana resident individual owners of vehicles serviced at a Valvoline Instant Oil Change location operated by Valvoline Inc. and whose vehicle engine oil was replaced with oil that did not conform to the vehicle manufacturer's specifications.

Excluded from the Class are Defendant, their respective affiliates, parents, subsidiaries, officers, agents, directors, the judge(s) presiding over this matter, and the clerks of said judge(s).

25.     Plaintiff reserves the right to amend the above definition or to propose other or

additional classes in subsequent pleadings and/or motions for class certification.

26.     Plaintiff is a member of the Class and Indiana Subclass.

27.     This action seeks both injunctive relief and damages.

28.     This case satisfies each of the following requirements for class certification set forth in Fed. R. Civ. P. 23.

29.     ***Numerosity.*** The class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). There are approximately 1,900 Valvoline service centers in the United States. Given the scale of Valvoline's business, and the common practices alleged herein, there are likely thousands of persons in the class making individual joinder impracticable.

30.     ***Commonality.*** There are questions of law or fact common to the Class, Fed. R. Civ. P. 23(a)(2), including, *inter alia*, the following:

      a.     Whether Valvoline substitutes oil of a different grade for oil it does not manufacture or have available at its service centers when it provided services to Plaintiff and the Class;

      b.     Whether Valvoline informed Plaintiff and the Class that it intended to substitute oil of a different grade than that recommended by the manufacturer before performing an oil change;

      c.     Whether Valvoline cautioned Plaintiff and the Class against using oil that is different from the oil specified by the vehicle manufacturer;

      d.     Whether Valvoline knew or reasonably should have known that it was not adhering to vehicle manufacturer specifications when it performed engine oil changes for Plaintiff and the Class;

      e.     Whether there are engine oil grades commonly specified by Kia or other

manufacturers that Valvoline does not make or have available for sale at its service centers; and

f.      Under what circumstances, if any, it is appropriate to substitute the oil recommended by the engine manufacturer for a different grade or viscosity.

31.     The foregoing questions satisfy commonality because the same evidence will suffice for each member to make a prima facie showing on the question or the issue is susceptible to generalized, class-wide proof, and determination of the question's truth or falsity will resolve an issue that is central to the validity of each one of their claims.

32.     Each Class member's claim depends upon a common contention, including, *inter alia*, that Valvoline replaced the oil in their vehicles with oil of a different grade than that recommended by the vehicle manufacturer which can decrease engine performance, damage the engine and/or limit warranty coverage.

33.     *Typicality.* The claims of Plaintiff are typical of the claims of the Class. See Fed. R Civ. P. 23(a)(3). This case satisfies typicality for the same or similar reasons set forth above with respect to commonality.

34.     Plaintiff's claim has the same essential characteristics as the claims of the Class at large.

35.     *Adequacy.* Plaintiff will fairly and adequately protect the interests of the Class. Fed. R. Civ 23(a)(4). Plaintiff has retained counsel who are competent and experienced in class action litigation on behalf of consumers. Further, Plaintiff has no interests that are antagonistic to, or in conflict with, the interests of the Class.

36.     *Predominance*. The questions of law or fact set forth herein predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). The Class is sufficiently

cohesive to warrant adjudication by representation, and the common questions set forth herein represent a significant aspect of the case, as explained above.

37.     *Superiority.*   A class action is superior to other available methods for fairly and efficiently adjudicating the controversy within the meaning of Fed. R. Civ. P. 23(b)(3). This is demonstrated the likelihood that any class members would want to maintain individual actions given the relatively small amounts at stake and the difficulty of obtaining counsel willing to pursue such relatively low value claims; the apparent lack of any such litigation having already been initiated; the desirability of concentrating the litigation of such claims in this Court as opposed to several courts hearing the same claim in different jurisdictions without coordination; and the lack of any apparent difficulties in the Court's management of the case before it as a class action.

38.     *Classwide Injunctive Relief.* In addition to satisfying the requirements of Fed. R. Civ. P. 23(b)(3), supra, this case satisfies the injunctive relief requirements of Fed. R. Civ. P. 23(b)(2), which requires a showing that the party opposing the class (Defendant) has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

39.     As alleged, Valvoline does not follow the specifications of some vehicle manufacturers regarding the oil they specify to maintain engine performance, prevent damage and avoid denial of vehicle warranty claims. Valvoline's practice of replacing Plaintiff's engine oil with the wrong grade is generally applicable to the Class as a whole, thereby making appropriate final injunctive or equitable relief on a class-wide basis.

## CAUSES OF ACTION

## COUNT I

### (Breach of Contract)

40.     Plaintiff repeats and realleges the foregoing allegations as though fully stated herein. This count is pled in the alternative to Count IV (Unjust Enrichment), *infra*. Plaintiff brings this Count individually and on behalf of the Class defined herein.

41.     Plaintiff is the owner of a 2025 Kia Sorento with a 2.5-liter turbo engine (the "Vehicle").

42.     On or about October 8, 2025, Plaintiff delivered the Vehicle to the VIOC location in Westfield, Indiana, for an engine oil change.

43.     At all relevant times, the Vehicle manufacturer specified that the Vehicle's engine required engine oil of a particular viscosity grade and performance specification, as set forth in the Vehicle's owner's manual and related manufacturer documentation.

44.     Specifically, Kia specified the use of Full Synthetic SAE 0W-30 API SN Plus/SP or ILSAC GF-6 engine oil for the Vehicle.

45.     By virtue of the foregoing, Plaintiff and Defendant entered into a contract, express and/or implied, pursuant to which Defendant agreed to perform an oil change on the Vehicle in a competent and workmanlike manner and in accordance with the Vehicle manufacturer's specifications.

46.     The contract included, expressly or by implication, a term that Defendant would install engine oil that met the manufacturer's specified viscosity grade and performance requirements for the Vehicle.

47.     Plaintiff performed all conditions precedent to Defendant's performance, including tendering the Vehicle and paying or agreeing to pay for the oil change service.

48.     Defendant breached the contract by installing engine oil that did not meet the manufacturer's specified viscosity grade and/or performance specification for the Vehicle. Specifically, Defendant knowingly substituted 5W-30 oil for 0W-30 oil, contrary to Kia's specifications.

49.     Defendant's breach constituted a material failure to perform the oil change service as agreed and deprived Plaintiff of the benefit of the bargain, namely, an oil change compliant with the manufacturer specifications.

50.     As a direct and proximate result of Defendant's breach, Plaintiff suffered damages, including but not limited to (a) increased risk of engine wear or damage; (b) costs to drain and replace the incorrect oil with manufacturer-specified oil; (c) diagnostic, inspection, and mitigation expenses; diminution in value of the vehicle; and (d) potential loss or impairment of manufacturer warranty coverage.

51.     Plaintiff seeks damages in an amount to be proven at trial, together with interest, costs, and such other relief as the Court deems just and proper for the foregoing breach.

## COUNT II

### (Breach of Implied Warranty of Fitness for a Particular Purpose)

52.     Plaintiff repeats and realleges the foregoing allegations as though fully stated herein. Plaintiff brings this Count individually and on behalf of the Class defined herein.

53.     Where the seller at the time of contracting has reason to know any particular purpose for which goods are required and that the buyer is relying on the seller's skill or judgment

to select suitable goods, there is an implied warranty that the goods shall be fit for such purpose. *See, e.g.*, Ind. Code § 26-1-2-315.

54.     Here, Valvoline had reason to know the particular purpose for which the engine oil was required - specifically, to lubricate Plaintiff's 2025 Kia Sorento with a 2.5-liter turbo engine according to manufacturer specifications. Plaintiff relied on Valvoline's expertise and judgment as an automotive service provider to select and install appropriate oil for his specific vehicle.

55.     The 5W-30 oil provided by Valvoline was not fit for the particular purpose of lubricating Plaintiff's engine, which required 0W-30 oil according to Kia's specifications.

56.     As a direct and proximate result of Defendant's breach, Plaintiff suffered damages, including but not limited to (a) increased risk of engine wear or damage; (b) costs to drain and replace the incorrect oil with manufacturer-specified oil; (c) diagnostic, inspection, and mitigation expenses; diminution in value of the vehicle; and (d) potential loss or impairment of manufacturer warranty coverage.

57.     Plaintiff seeks damages in an amount to be proven at trial, together with interest, costs, and such other relief as the Court deems just and proper for the foregoing breach.

## COUNT III

**(Violation of the Indiana Deceptive Consumer Sales Act, IN Code § 24-5-0.5-1 *et seq.*)**

58.     Plaintiff repeats and realleges the foregoing allegations as though fully stated herein.

59.     Plaintiff brings this Count individually and on behalf of the Indiana Subclass defined herein.

60.     The purposes and policies of the Indiana Deceptive Consumer Sales Act (the "DCSA"), Indiana Code § 24-5-0.5-1 to -12, are to:

(1)    simplify, clarify, and modernize the law governing deceptive and unconscionable consumer sales practices;

(2)    protect consumers from suppliers who commit deceptive and unconscionable consumer sales practices; and

(3)    encourage the development of fair consumer sales practices.

Ind. Code § 24-5-0.5-1(b).

61.    The General Assembly has instructed courts to construe the DCSA liberally to promote these purposes and policies. Ind. Code § 24-5-0.5-1(a)

62.    Valvoline is a "supplier" as defined in the DCSA because it is a seller or other person who regularly engages in or solicits consumer transactions, which are defined to include sales of personal property, *services*, and intangibles that are primarily for a personal, familial, or household purpose, such as the oil change services Valvoline provides. Ind. Code § 24-5-0.5-2(1), (3) (emphasis added).

63.    The DCSA provides that "[a] supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of [the DCSA] whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations." Ind. Code § 24-5-0.5-3(a).

64.    An "incurable deceptive act" is a "deceptive act done by a supplier as part of a scheme, artifice, or device with the intent to defraud or mislead. Ind. Code § 24-5-0.5-2(a)(8).

65.    The DCSA further provides in relevant part:

[T]he following acts, and the following representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier, are deceptive acts:

(1)    That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not

have which the supplier knows or should reasonably know it does not have.

(2)    That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

Ind. Code § 24-5-0.5-3(b).

66.    Valvoline committed deceptive acts, including but not limited to the following:

a.    Substituting oil of a different grade for oil it does not manufacture or have available at its service centers when it provided services to Plaintiff and the Class;

b.    Omitting to disclose to Plaintiff and the Class that it intended to substitute oil of a different grade with that recommended by the manufacturer before performing an oil change;

c.    Misleading Plaintiff and the Class regarding its substitution of the oil recommended by the engine manufacturer for a different grade or viscosity and/or the consequences and risks of doing so.

67.    Valvoline's violations of Section 3(b) set forth above were willful and were done as part of a scheme, artifice, or device with intent to defraud or mislead, and therefore are incurable deceptive acts under the DCSA.

68.    The DCSA provides that "[a] person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater. The court may increase damages for a willful deceptive act in an amount that does not exceed the greater of: (i) three (3) times the actual damages of the consumer suffering the loss; or (ii) one thousand dollars ($1,000). Ind. Code § 24-5-0.5-4(a).

69.     The DCSA further provides that "[a]ny person who is entitled to bring an action under subsection (a) on the person's own behalf against a supplier for damages for a deceptive act may bring a class action against such supplier on behalf of any class of persons of which that person is a member  and which has been damaged by such deceptive act, subject to and under the Indiana Rules of Trial Procedure governing class actions . . . ." Ind. Code § 24-5-0.5-4(b).

70.     Had Plaintiff and the Class been aware that Valvoline would replace the oil in their vehicles with oil other than that recommended by the vehicle manufacturer, they would not have had their oil changed by Valvoline and would not have paid for such service.

71.     As a direct and proximate result of Valvoline's unfair and deceptive acts and practices in violation of the DCSA, Plaintiff and the Class have suffered damages for which Valvoline is liable.

72.     Plaintiff and the Class seek actual damages plus interest on damages at the legal rate, as well as all other just and proper relief afforded by the DCSA. As redress for Defendant's repeated and ongoing violations, Plaintiff and the Class are entitled to, *inter alia*, actual damages, treble damages, attorneys' fees, and injunctive relief.

### COUNT IV

### (Unjust Enrichment)

73.     Plaintiff repeats and realleges the foregoing allegations as though fully stated herein. This count is pled in the alternative to Count I (Breach of Contract), *supra*.

74.     Plaintiff brings this Count individually and on behalf of the Class defined herein.

75.     Plaintiff rendered a measurable benefit to Valvoline at its express or implied request by virtue of paying for its oil change services described herein.

76.    Plaintiff expected payment from Valvoline in the form of its provision of the oil change services consistent with the specifications of the vehicle manufacturer.

77.    Allowing Valvoline to retain the benefit of Plaintiff's payment without restitution would be unjust as it did not perform the oil change consistent with the specifications of the vehicle manufacturer.

78.    As a direct and proximate result of Valvoline's unjust enrichment, Plaintiff has suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all other members of the Class, respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

A.    Certifying that Class as requested herein, appointing the named Plaintiff as Class representative and the undersigned counsel as Class counsel;

B.    Requiring that Defendant pay for notifying the members of the Class of the pendency of this suit;

C.    Awarding Plaintiff and the Class appropriate monetary relief, including their actual damages, statutory damages, treble damages, restitution and disgorgement;

D.    Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of himself and the Class, seeks appropriate injunctive relief sufficient to prevent Defendant from continuing to replace oil in vehicles with oil that is different from the grade recommended by the vehicle manufacturer;

E.    Awarding Plaintiff and the Class prejudgment and post-judgment interest to the maximum extent allowable;

F.    Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and

expenses, as allowed, together with their costs and disbursements of this action; and

G.    Awarding Plaintiff and the Class such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Date: February 11, 2026                     Respectfully submitted,

ROBERT CAMPBELL

By:    /s/ William M. Sweetnam
        One of His Attorneys

William M. Sweetnam
SWEETNAM LLC
230 Northgate Street, Suite 103
Lake Forest, Illinois 60045
(847) 877-2970
wms@sweetnamllc.com

*Attorney for Plaintiff and the Class*